CHAMBERLAIN VS DARRINGTON.

*Points as to several counts.*
*As to error, and practice in.*
*As to writings importing consideration.*

1. The rule, that if there be one good count, coupled with others bad, a demurrer to the whole declaration will be overruled, provided there be not a misjoinder of actions—prevails also in error.
2. An inferior Court will not be held to have committed error, in refusing a charge, no ground to sustain which has been laid by evidence.
3. The practice of bringing before this Court voluminous books or papers, by attaching them to the bill of exceptions, or as references, is irregular and improper.
4. Such *parts* of records, books or documents as are pertinent to matters to be considered in the appellate Court, should be inserted in the bill of exceptions.
5. In all actions founded upon instruments in writing, whether raising an absolute or contingent duty, the *onus probandi*, of illegal or no consideration, rests on the defendant, and require no proof of consideration by the plaintiff.
6. Thus, where the holder of a land note, on receiving the amount thereof from the maker, in a writing on the same, obligated himself to return the amount, if the Courts should determine such notes not to be valid, in an action to recover the amounts so paid, founded on the writings—it was held, that no evidence of consideration, by the plaintiff, was necessary.

This was an action of assumpsit, tried in the Circuit Court of Washington, and prosecuted by Darrington vs Chamberlain.

The plaintiff declared, for that, theretofore, to wit, on the twenty-ninth day of April, A. D. eigh-

teen hundred and nineteen, at, &c. the said Darring-ton, together with R. W. Carter, made their certain writing obligatory, sealed with their seals, and bearing date the same day and year aforesaid; and thereby, then and there promised *on or before the twenty-eighth day of April, A. D. eighteen hundred and twenty-one, to pay* ————, *or bearer, one hundred and fifty dollars, with interest from date, if not punctually paid, for value received.*

And afterwards, to wit, on the same day and year aforesaid, the said writing obligatory went into the possession of the said Chamberlain, who became, and was entitled as the bearer thereof to receive the said sum of money in said writing obligatory specified.

And whereas, afterwards to wit, on the twenty-eighth day of December, A. D. eighteen hundred and twenty-one, at, &c. the said Chamberlain, then being the holder and bearer of said writing obligatory, presented the same to the said Darrington for payment, who then and there paid the said sum of money due on the said writing obligatory, to the said Chamberlain, on the said Chamberlain executing to the said Darrington, an instrument in writing on the back of the said writing obligatory, in the words following, to wit:—

" Received of the within in full, and I obligate and bind myself, should the Courts determine that notes of this description are not valid, to return the money paid."

And the said Darrington averred, that the Courts had determined, that notes of that description were not valid. By means whereof, &c.

In addition to the count above stated, there was a count for money had and received.

To this declaration the defendant plead—

First—*Non-assumpsit.*

Secondly—That the obligation was given without consideration.

Thirdly—The statute of limitations of six years.

And upon these pleas issue was taken to the country; under which a verdict was found for the plaintiff.

A bill of exceptions taken during the trial showed these facts.

The plaintiff, in order to maintain the issue, on his part, introduced as evidence, a printed note, as alleged in the declaration, and proved that it was what was commonly known as a *land note;* and of the character of the notes in the cases of *Carrinton vs Caller* and *Holder vs Meggison & Hill,* reported in the second volume of Stewart's Reports, 175. He then introduced as testimony, the receipt written on the back of said note, and the case cited from 2d Stewart's Reports.

The defendant, on his part, gave evidence of a notice previously served upon the attorney of the plaintiff, and which required proof of the consideration for which the obligation had been given. But no evidence of consideration was adduced. The defendant further proved, that Darrington had been an efficient, serviceable and active witness in the cases cited from Stewart's Reports, and had paid the witness who deposed to the fact, the sum of two hundred and fifty dollars, for professional services, in defending those causes.

Defendant also proved, that at a preceding term of the Circuit Court of Mobile county, a recovery had been effected against one Waters, upon his pleas of a want of consideration in the cause of action, which was also one of these land notes, and the recovery had both in Chancery and at law. And further that sundry recoveries had been had in the District Conrt of the United States, upon notes of the same description with that sued upon in this action —upon pleas of fraud, similar to those relied upon, in *Carrington vs Caller*.

On this evidence the Court was requested to charge—

That the plaintiff having offered no evidecne of a consideration for the promise, though in writing, it was *nudum pactum*, and void.

The Court refused this charge, and informed the jury—First, that the receipt which had been read to them was evidence of a consideration.

Secondly—That a promise to pay money, or to wager on the event of a suit pending in the Circuit Court, in which plaintiff was a witness, was contrary to good morals and sound policy, and would not sustain an action.

The Court refused.

Thirdly—That money paid under a mistake of the law, could not be recovered back.

This the Court also refused.

Fourthly—That money paid under an illegal contract, could not be recovered back.

Which the Court refused.

Fifthly—That where a contract grows immediately out of, and is connected with, an illegal or immoral

act, a Court of justice will not lend its aid to enforce it: and if a contract be in part, only connected with the illegal transaction, and growing immediately out of it,—though in part a new contract,—it is equally tainted.

This likewise, the Court refused. And the Court as a reason for refusing to give these several charges, as requested, alleged that they did not arise in the cause.

And here for assignment of errors, the defendant said:—

First—There was no sufficient cause of action shewn in the declaration of the plaintiff below.

Secondly—That the Court erred in its several decisions, and in refusing to instruct the jury, as shewn in the bill of exceptions.

*Stewart* and *Thornton* for plaintiff in error.

GOLDTHWAITE, J.—The first assignment in error, presents for the consideration of this Court, the question, whether there be any sufficient declaration in the cause?

On examination of the record, we find, in addition to a count on a written instrument, which will be subsequently considered, a count *for money had and received*; which is framed in strict conformity with the most approved precedents. We may therefore dismiss the consideration of this assignment, with the observation, that the general rule is the same, after error brought, as that which prevails on a demurrer to the whole declaration. If there be one good count, the demurrer will be overruled, although

it may be incorporated with others which are defective, provided there is no misjoinder of actions.

For the correct understanding of the other assignment of error, it will be necessary to set forth the substance of the first count of the declaration.

It alleges, "that on the twenty-ninth day of April, eighteen hundred and nineteen, the said plaintiff, and one R. W. Carter, made their certain writing obligatory, sealed with their seals, and bearing date the day and year aforesaid, and thereby, then and there promised, on or before the twenty-eighth day of April, eighteen hundred and twenty-one, to pay —— or bearer, one hundred and fifty dollars, with interest from the date, if not punctually paid, for value received; and whereas afterwards, to wit, on the same day and year aforesaid, the said writing obligatory, came to the possession of the said defendant, and he thereby became and was entitled, as the bearer thereof, to receive the said sum of money, in the said writing obligatory specified, according to the tenor and effect thereof; and whereas, afterwards, to wit, on the twenty-eighth day of December, eighteen hundred and twenty-one, at St. Stephens, to wit, in the county of Washington, the said defendant, then being the holder and bearer of said writing obligatory, presented the same to the said plaintiff, and the said plaintiff, then and there paid the said sum of money, due on the said writing obligatory, to the said defendant, on the said defendant executing to the said plaintiff, an instrument in writing, on the back of the said writing obligatory, of the following tenor, to wit: received of the within in full, and I obligate and bind myself, should the Courts determine that notes

of this description are not valid, to return the money paid—and the said plaintiff avers, that the Courts have determined that notes of this description are not valid, of which the said defendant had notice; by means whereof, the said defendant, then and there became liable to pay to the said plaintiff, the said sum of money, in the said writing obligatory specified"— and concluding with a promise to pay, in considera- tion of such liability; and the declaration, after the addition of the count for money had and received, concludes with assigning as a breach of the contract, the non-payment of the several sums of money, in the usual form.

The defendant pleaded, non-assumpsit, that the instrument, which is the foundation of the plaintiff's action, was made and given without any considera- tion in law, and the statute of limitations of six years; on all which pleas, issue was joined to the country.

On the trial of the cause, as we are informed by the bill of exceptions, the plaintiff introduced a print- ed note, which is alleged in his declaration, and proved that it was what is commonly called a land note, and of the same character and description of the notes in the cases of *Carrington vs Caller* and *Holder vs Meggison & Hill.** [*2 Stew's Rep. 175.]

The plaintiff then gave in evidence the receipt, which is written on the back of the printed note, and set forth *verbatim* in the declaration and indor- sed on the writ; and gave in evidence further, the above cited cases in 2 Stewart, 175.

The defendant gave in evidence, a written notice to the attorney of the plaintiff, dated in October, eighteen hundred and thirty-four, service of which

4 P.            66

was acknowledged, apprising the said attorney, that on the trial of the cause, he should require him to prove the consideration for which the above recited receipt was given.

No evidence of any consideration, was offered by the plaintiff's attorney.

The defendant further gave in evidence, that the plaintiff was an active, efficient and serviceable witness, in the cases of *Carrington vs Caller*, and *Holder vs Meggison & Hill*, and gave the witness two hundred and fifty dollars, for his professional services in defending the said causes: The defendant further gave in evidence, that at the then last Circuit Court of Mobile county, a recovery had been had against one Waters; that in that case, the defendant pleaded that the instrument was fraudulent; that the Court gave the defendant leave to file an additional plea, which was done and demurred to; that the defendant then amended his plea, which was also demurred to, and the demurrer sustained : and that at a former term of the said Court of Mobile, a recovery was had against the same defendant, which cause was carried through the Court of law and Chancery, and that both recoveries were upon land notes, so called. The defendant further gave in evidence, that several recoveries had been had in the District Court of the United States, upon notes of the same character, upon pleas of fraud similar to those in the cases of *Carrington* and *Holder*, before mentiened.

The defendant requested the Court to charge the jury:

First—That the plaintiff having offered no evidence of a consideration for the promise, though the promise

be in writing, is *nudum pactum*, and therefore void.

Which charge the Court refused to give, but charged the jury, that the receipt which had been read to them, was evidence of a consideration.

Second—That a promise to pay money, or to wager on the event of a suit pending in the Circuit Court, in which the plaintiff was an active witness, is contrary to good morals and sound policy, and will not sustain an action.

Third—That money paid under a mistake of law, cannot be recovered back in an action.

Fourth—That money paid under an illegal contract, cannot be recovered back.

Fifth—That where the contract grows immediately out of, or is connected with an illegal or immoral act, a Court of justice will not lend its aid to enforce it; and if the contract be in part only, connected with the illegal transaction, and growing immediately out of it, though it be in part a new contract, it is equally tainted by the illegal transaction or immoral act.

The last four of the above charges, were refused without any qualification.   All this was excepted to by the defendant, and is now assigned for error.

No exception was taken to the introduction of any of the evidence offered in the Court below, and the case is sought to be reviewed alone on the charges refused to be given, and the charge which was given to the jury.

All the charges asked for, *except the first*, are considered by the Court to have been properly refused, because no ground is laid by the evidence, for requesting them; so far as we can ascertain, they have no relevancy, whatever, to the questions presented by

the facts, before the Court; and they must be consid-
ered as requests to lay mere abstract questions of
law, before the jury, for their consideration; which
this Court has often decided, cannot be done.

The reference to the cases, decided by this Court,
cannot aid the condition of the plaintiff in error; for,
if these cases, should be connected with this record,
by thus setting them out in the bill of exceptions, the
Court would yet be unable to perceive the relevancy
of the instructions requested. But, the Court think
proper now, to intimate their opinion of the irregular-
ity of attempting to bring before the Court, a printed
book or a voluminous record, either by reference or by
attaching them to the bill of exceptions. Such parts
of records, books or documents, as are material, alone
should appear in the bill of exceptions, and the re-
cord should not be encumbered by superfluous mat-
ter.

The first charge which was asked, and which has
before been stated properly, raises the question,
whether the instrument offered in evidence, does of
itself import a consideration? If it does, the charge
given, was correct. If it does not—the position as-
sumed by the Court below, cannot be sustained.

It may not, we think, be questioned, that at com-
mon law, no written instruments imported a consid-
eration, save only such as were of a mercantile char-
acter, or under seal. This seems to have been the
construction given in this State, (then Territory,)
previous to the year eighteen hundred and eleven—
For in that year, a statute was enacted, declaring,
"whenever any suit shall be commenced, in any of
the Courts, founded on any writing, *whether the same*

*be under seal or not,* the Court, before whom the same is depending, shall receive such writing as evidence *of the debt or duty,* for which it was given; and it shall not be lawful, for the defendant or defendants, in any such suit, to deny the execution of such writing, unless it be by plea supported by the affidavit of the party putting in such plea."

This statute seems to consist of two distinct parts; the first abolishes the distinction existing between sealed and unsealed instruments, so far as any difference then existed, as to one importing a consideration, and the other not so doing. A bond with a condition for the performance of a duty at common law, imported a consideration, as well as one for the payment of money, merely; and it is perhaps, equally clear, that a writing not under seal, nor of a mercantile character, did not of itself, establish a consideration, unless one was set out in the instrument itself.

Why such a distinction should have been permitted to exist so long, is perhaps, a matter of more surprise, than that it should at last be abolished.

By the law merchant, early introduced into our jurisprudence, a promissory note imported a consideration: although it was not until the statute of Anne was enacted, that its negotiable character was established. And yet in any other contract for the performance of a duty, if the writing was not under seal, evidence of the consideration was necessary to be given *dehors* the instrument, unless stated in the writing itself.

Our statute seems to have the object distinctly in view, to place all written instruments on the same footing, and to cast on the defendant, the *onus* of shew-

ing there was either an illegal or no consideration, in all cases where the action in its form, was founded on the writing: And it seems not to contemplate any destinction between these instruments, which raised an absolute or a contingent duty. In this respect, it is not similar to our statutes, which make notes and bonds negotiable; they all seem to contemplate a note or bond, payable absolutely, and not depending on a contingency.

The other branch of the statute, restrains any defendant from putting the *execution* of any such writing in issue, unless by plea, supported by affidavit. This introduced a greater change in the law, than the other branch; because, previous to its passage, *all* instruments, whether sealed or not, must be proved to have been executed, and this rested, of course, on the plaintiff in the action.

The just rights of defendants, seem not to have been disregarded by the authors of this statute; for if a plea, supported by affidavit, was interposed, the plaintiff was bound to proceed with proof, as before, so far as the execution of the instrument was put in issue. But they have not seen proper, in any case, to throw on the plaintiff, the burthen of proof, where the defendant has admitted, under his hand, a debt to be paid, or a duty to be performed; nor can we question the policy or the right, to abolish a distinction, which perhaps had little authority from reason, to countenance it.

In another view of the statute, the rights of defendants seem to have been fully and amply protected. It is only in suits which are *founded* on the written instrument, that the statutary rule prevails—thus

guarding the defendant from all danger of surprise. If on the common counts, or other forms of pleading, other than declarations in the instruments themselves, the written instrument is not evidence, unless proved in the mode proscribed by the common law. See *Cass vs Northrop.** 

*1 Stew. & Porter 89.

How far it would now be necessary, to establish a consideration for any written instrument, signed by a party, when offered in any other manner, than in a suit founded on it—is a point on which this Court will not now undertake to express an opinion, as the point is not necessarily put on our consideration in this cause.

The Court is relieved from the consideration of the question just adverted to, by the fact, that in this cause, there is a declaration on the instrument, as the foundation of the action; and although the count on it, may not, perhaps, be strictly technical, yet we hold it to be substantially good, after verdict; and our statute provides that no cause shall be reversed after verdict, for any matter on the face of the pleadings, not previously objected to : provided the declaration contains a substantial cause of action, and a material issue be tried thereon.

The judgment must be affirmed.